The government in this case has conceded two separate confrontation clause errors that the district court committed because the government cannot provide proof beyond a reasonable doubt that those violations were harmless, this court must reverse. Likewise, because Mr. Briggs's arrest was not supported by probable cause and the government cannot establish that the error was harmless, this court must reverse. Must we reverse or can we remand for a new suppression hearing as has been done in at least one, I pulled out the wrong file, been done in at least one and I expect more than one Ninth Circuit hearing. I don't think that remand would be appropriate in this case, Your Honor. There was a hearing that was held on the motions. The district court determined at that time that no evidentiary hearing was required. It considered matter based on the briefing and the factual record before it at that time. So I don't think that it would be appropriate to send it back for an evidentiary hearing. Counsel, if I could ask a question. I think there's obviously no issue that you're entitled to have the conviction reversed because of the errors on the confrontation clause that are conceded by the government. So I'm assuming that yes, we will do that. But on the issue of the motion to suppress, I'd like to at least focus on that in a little more depth. Here's my understanding. This could be wrong, so correct. My understanding is that the custom patrol people or the border people thought that the alien entered with phony papers. Correct. That pinned down completely, but they thought he did. They put him under surveillance. Then subsequent to that, they see him together with with Appellant Briggs at the fast food restaurant for a couple of hours. They see Briggs looking towards the border, which probably doesn't have much weight, but it may have significant weight that they sit together for two hours in the restaurant, which people normally don't do in a fast food place. Then they go on and Briggs leaves the restaurant with the alien and they walk down the street together and they encounter Mr. Moran and then the alien goes on with Moran and Briggs walks back. Moran takes the alien to a car. After all of this, the police arrest everybody concerned, thinking it's like an alien smuggling conspiracy. So why isn't there probable cause to arrest in the sense of a fair probability, not a certainty, but fair probability that there's criminal conduct when, from the facts I've just stated, to me at least it looks like they could think the guy is guiding the alien. Your Honor, the court must look at the totality of the circumstances and I don't think that as to Mr. Briggs, there was a fair probability that a crime was being committed. What the officers knew at the time was merely that they had a suspicion that Mr. Duarte had crossed with improper documentation and that he and Mr. Briggs had had a... If they had a suspicion of that, why didn't they act on that with respect to Duarte at that point? Well, because as we went to trial, Your Honor, the officers were conducting investigation and they were essentially doing a controlled delivery. They wanted to watch Mr. Duarte to see where he went. They wanted to see who was guiding him. They think he's probably got phony papers and they want to see who's going to contact him. So instead of stopping him there, they let him go forward and watch who he has contact with. Correct. Isn't that basically what happened? That is correct, Your Honor. I'm sorry. I'll ask this to the government, too, but I've read the... Let me ask this. Was there any evidentiary hearing before the motion to suppress was decided? There was none, Your Honor. What was the factual basis that the district judge had to decide the matter, which he did in about three paragraphs on 561 and 569? That's correct, Your Honor. Were there any affidavits? There were no affidavits. The only facts that the Court had before it were those that were presented in the government's briefing. Well, in both parties' briefing, but primarily I think the Court relied on the government's briefing, which has been supplied by the government in its supplemental excerpts of record. But the government has the burden of proof on the motion to suppress, right? Yes. And there was no affidavit. I couldn't find, this is a preview of coming attractions, maybe more for your colleagues. You seem to concede something to Judge Gould that I couldn't ascertain for the record, and that is whether Briggs was arrested before the collective knowledge of the agents included Duarte being led into a feed store and then to the Bank of America parking lot. Thank you, Your Honor. If I conceded that or appeared to concede that, that was a mistake, because I don't concede that. I believe that the record is actually silent on the exact timing of when the arrests were made. So there's nothing in the record that suggests that, for instance, after Duarte and Moran and Dimas were arrested in the parking lot, that the other officer was radioed to pick up Briggs. And let me ask you again the question I started with, but phrase it a little differently. Putting, is it permissible to remand rather than reverse? And then there would be a related question. Is it appropriate or is it appropriate to reverse? Because I find it very hard to analyze the, well, is it ever permissible to remand rather than reverse with regard to a motion to suppress? And I'll say I know it's been done at least in Botello, Rosales, 448 Fed Appendix 764 by the Ninth Circuit. And, Your Honor, I'm not familiar with that case off the top of my head, but my response would be that it would be inappropriate in a case like this. Because there was a hearing on the motion that the Court elected not to go forward on evidentiary hearing, the government could have put on evidence if it had so chosen. But it's all, there's also Ninth Circuit precedent, though, that permits consideration of trial testimony in deciding whether something should have been suppressed. But the trial judge, although the defendant reiterated the motion to suppress, the trial judge, again, didn't give any reasoning. So I can't discern myself what in the trial testimony would have, well, I just can't tell what he was relying on. He mentioned it. It is a bit opaque, Your Honor. I guess I would say that the government has the burden to prove that the warrantless arrest was constitutionally sound. And if the Court concludes that it can't determine from the record that that's the case, it should rule in favor of Mr. Braves and reverse. I don't think there's any reason. But what if we, what if, you know, what if some of us were inclined to go one way and some of us were inclined to go the other way? Judge Gould has indicated, at least for himself, maybe for all of us, that this case is going to go back for something. Why shouldn't it go back for this, too? Obviously, if the Court feels that the record needs to be fleshed out, the Court has within its authority to remand on this issue. But it would be my position that it would be inappropriate because it was the government's burden. And if the government didn't satisfy that burden with facts sufficient to convince this Court that the stop was constitutionally sound, then that settles the matter. And if the motion to suppress was granted, what evidence would be excluded? Important evidence. Precisely. Evidence that the Court, that the government relies on in its harmlessness analysis. There would be Mr. Briggs' statement, first and foremost, but also the information gained from Mr. Briggs' phone at the very least, if not Mr. Duran's, which included the phone calls to Mr. Moran because no calls were retrieved from Mr. Moran's phone. That's really what connected them up. Correct. And there was also the text message, which the government relies on heavily, this Imatt-Cotes text message, which the government imports. Counsel, you'd like us to reverse on that issue so you win the whole thing now based on a burden of proof or other analysis. And probably the government would like us to affirm on that issue without a remand. And I'm sort of interested in your technical answer to the question posed by Judge Woolf. Is there anything that doesn't give us the power to remand if we'd like a better record on the facts? I'm unaware of anything that prohibits the Court from remanding for the district court to consider evidence on that. And also, as I said in my hypothetical, I was sort of under the impression that the But that might be wrong. I don't know where I got that, maybe from a brief. There's nothing in the record. Is it your contention that he was arrested before Moran was arrested? Before the alien got to the car. My position, Your Honor, is that the record is completely silent on that question. I don't know the answer to that one way or the other, but I don't think that there's any testimony as to radio communications directly to the officer who ultimately arrested Mr. Briggs. Well, if he was arrested, if Briggs was arrested before, I guess, Duarte was taken to the car, would that make a difference in the analysis? Would it be prior to the police being able to come up with a sense that there was a fair probability he was involved in the crime? I think so, Your Honor, because of the dynamic that was occurring in the parking lot, where there became much more patent that Mr. Duran was being led to a car and presumably to be taken to a different location. And before that, the record really, with respect to Mr. Briggs in particular, is very thin. And I think, obviously, these are very fact-intensive inquiries, but if the Court observations that have been made by law enforcement officers in those cases, and I'm talking about, for instance, Del Vizio, cases cited by the government, U.S. v. Gill, Garcia v. County of Merced, in each of these cases that government has relied upon in its brief, there's been extensive surveillance and there's been analysis provided by the officers typically about the type of observations that were made. And I think that's what distinguishes this case also, is that there's really not any analysis done by the officers. So they say that, you know, Mr. Briggs and Mr. Duarte were sitting in the jack-in-the-box restaurant and they're walking down the street. But they don't say, for instance, that that's behavior typical of alien smuggling. So there's nothing really to inform either the district court or this court as to what they're relying on in terms of coming to the conclusion that there is probable cause. The trial judge, in his three-paragraph oral decision, mentioned their training and experience, but there's no fact that, as far as I can tell, the record indicates the agents, even in the government's brief, said, well, based on our training and experience, it's suspicious that somebody sat in a fast food restaurant. And I didn't find where it got to be two hours. I thought some of the testimony was it was an hour, it was a little more than an hour. One of them, I think, did say two hours. But even that's not clear. That's correct, Your Honor. There is ambiguity. And I think with respect to that, the observation made by law enforcement, again, one of the agents, in fact, gave testimony. The analysis that he did give was cutting against the finding of probable cause, in my opinion, because it was his reaction to Mr. Duarte crossing through the border that he immediately then went to a freeway on-ramp because he testified that, in fact, what often occurs is that individuals who have crossed in illegally will then be taken immediately away from the port of entry, which makes sense because that is the area where there's the densest concentration of CBP and border patrol agents. I see that I've exceeded my time, Your Honors. Well, I think we've helped you exceed it. Thank you. May it please the Court. Larry Spohn of the United States. I realize the government and the district court made serious errors in this case. But I would hope to persuade you, as this Court has already decided as to Mr. Moran, that all these issues should be resolved in favor of the government and its brief. The motion should suppress with respect to Mr. Moran. Was it entirely on the same basis as the one with respect to Mr. Briggs? Yes. It's the same rule. Well, I'm sorry. Go ahead. But I would say the following. I read it. And, one, there may be a material difference in the facts. Moran was arrested in the Bank of America parking lot. And they had left Briggs. They had walked through a feed store. Right? Yes. And they went. Right. Briggs left Moran, walked to the border, and was arrested. It appears to me that Briggs was probably arrested before Moran. So it's possible that there's that material difference, right? Yes. There is. The record is unclear. And it would actually – I think it's probably pretty close in time. But my knowing that area, I would guess that it probably was made before that was done. But I would say the judge didn't just say there's probable cause to arrest. He also said even if there wasn't, there was enough suspicion to detain and investigate. So you could uphold on that. Except he was immediately cuffed. What detention and investigation that would be permissible under a Terry stop was conducted? Also, he would not be able to seize the contents of his cell phone as a search incident to a Terry stop. That's not allowed. No, but that wasn't done until later, after all the information was gathered. Well, what does the record tell us? As I read the record, Briggs was immediately cuffed. I believe that's true. So what additional – you can't arrest somebody based on reasonable suspicion. This is going to be our next case. Right? You can detain them to do reasonable investigation. Yes. And in some cases, there have been cases where someone is cuffed while they're detained in order to protect people. You're going to argue that a reasonable person cuffed like Mr. Briggs would feel that he was free to leave? I don't believe so. I don't think so. But even despite all of that, I would still argue that experienced officers watching – First of all, this guy was an imposter. He's coming through with a fake ID. They know that. They are – they have an operation that day to do and observe just what happened here. And what they did observe was him waiting an inordinate amount of time for a fast food restaurant while Mr. Briggs is constantly looking back at that – at that border a little bit. But the – this is why I'm seriously considering a remand, because no officer testified to that. I didn't find anything in the record where an officer says – I mean, I do think it's more than a suspicion. Two border agents said, we recognize that that picture wasn't the man coming in. So they had good reason to believe he was an alien to do, in effect, an undercover operation. But it seemed to me that somebody might have testified. They were a long time in the fast food restaurant. And as far as I can tell from the record, they didn't eat. Maybe that – somebody would say, based on my training experience, that's suspicious. But that's not in the record. And the judge encants these magic words, training and experience, you know, reasonable suspicion. But there's no underlying factual basis to give content to that. I would point out one thing. I don't think it's real strong. Ornelas tells us not just the training and experience. Should we look – should this court defer to the training and experience of the officer, but also to the local district court? This district court is used to seeing these kind of cases and knows the kinds of things that happen. What we're seeing lately, and we've seen it this week, is that because there are so many of this type of cases in the Southern District, some of the judges are getting a little sloppy with them. And they're not adhering to all of the technicalities, or maybe even having a full evidentiary hearing where they should have had a full evidentiary hearing before making certain findings. It's just, you know, there are so many of these cases. And that's not a good excuse for, you know, not fully and fairly giving each defendant their rights. I do agree that it would have been better to have a hearing in this case. I share Judge Wardlow's concern on the last point she made. I just wondered, I know in the immigration area, under a precedent I wrote called soto alarte, we often remand on an open record for a hearing. In other words, the remand permits each side to present whatever evidence they think is relevant. Is there any reason why we could not do that here? And if we're sending the case back anyway to the judge on the issues that are conceded, is there any reason we shouldn't say, and on the new trial before you admit the evidence from the cell phone, et cetera, you should hold a hearing on an open record to determine if the arrest was lawful or not? No, I don't believe there's anything to prevent this Court from doing that and could require the district court to do it. As I said, I don't. It's not my position it's not necessary, given that. The actions at the thing and the passing off, that's enough. But I don't know of anything that would prevent this Court from doing that. I would like to address, I know the Court seems pretty clear about what it wants to do, but I would like to at least give me the chance to make an argument that this was harmless error. Which was harmless error? As to both. The complication clause? As to the material witness and the co-defendant statement. Okay. I think when we look at it, we have to ask, first of all, what was the evidence against him without this, without the material witness statement? And I would like to sort of go at it from the opposite. What would we have to believe to believe he was really innocent? Because quite honestly, when I was looking at this case, my first impression was, maybe we should just concede here and have a retrial. But then I asked myself, was there an injustice done? Was there any chance that this guy, despite this other element, was not guilty? We'd have to believe that it was just coincidence that he happened to say, I'm at Cotez, which is the very place where Ms. Dimas says all the alien smuggling starts. We'd have to believe it's just coincidence he came across with this particular alien. That he then coincidentally met with Jack in the Box. Who came across with the alien? Who came across? He didn't come across with the alien. Yes, he did. Mr. Briggs came across. We have him on the video. I'm still on the probable cause, I'm afraid. That wasn't known at the time he was arrested. No, no, no, no. Now I'm talking about the harmless error for these other. I know, but if we suppress that evidence. Oh, absolutely. So if we remand for a hearing on open record on the suppression, then you lose your harmless error argument on the confrontation clause. Yeah, I would concede if you find there wasn't probable cause, that takes away the phone and his statement. You're making a valiant argument, but you could break your pick on this one. It's too avoid a remand here, I think. I would just encourage the court to look at the other case, and I think the same argument was made there. And really, I think the only difference between that case and this one, in terms of the harmless error, is there that defendant confessed. Here, this defendant didn't confess, but we proved he lied. And that is just as good in the face of the jury, I would say, as the confession. Moran actually took Duarte into the car and took him. No, he just took him to the car. They were arrested then. And so Briggs took him to Mr. Moran. He passed him off just, as I say, like cocaine. If you watch cocaine being passed off, you'd say anybody who touches it, there's at least a fair probability they might be involved in something. So I think, you know, that's what this was. This was an imposter. They're watching him come through, and he's being passed off. That's what they're seeing. That's what's happening here in terms of smuggling, and I think that's probable cause. Okay, so your argument is, let's say, you know, even that, one, two border agents felt strongly the man coming across was not the man in the picture, and he met with somebody in a fast food restaurant for at least an hour. That alone is probable cause. Well, once he passes him off to another individual, then for sure there's probable cause. That's where I would – I might, you know, if I was stuck with those, could I argue that's probable cause, I'd say that's pretty close. But I would say once he passes him off to another individual, now we're seeing that evidence of smuggling, and that's what happened. He met with Moran. There was a short, very short conversation. Duarte continues on with Moran, and Mr. Briggs immediately turns, and he goes not just – I think it's somewhat, slight significance, but some significance that he's going back to Mexico. He's going back where this defendant just came from. So he's not just walking away. He's going right back because they catch him in the pedestrian lane. Off the subject a little bit, but I'm just wondering, how does Briggs have the ability to keep going back and forth across the border? I think he was a – I think he's a U.S. citizen. I believe he's a U.S. citizen. Am I – am I wrong? I don't know. I thought Mr. Briggs was a U.S. citizen. That was my understanding. It seems to me that the passing off to Moran is much more significant than the conversation in the fast food place just because – and I don't – it's not usual that everybody chats up for an hour or more in a fast food restaurant. But, you know, it could happen. Right. But for probable cause, we don't have to do away with every innocent explanation. We only have to know, you know, that is there a fair probability? And I think, quite frankly, given this, watching this impostor come across and being passed off to another person means there's at least a fair probability that alien smuggling is occurring and that they had the – they should have had the ability to do that. Can I – you've got – maybe we've gone over. But, you know, I think you started by saying the government and the district court made serious errors. Yes. What specifically did you have in mind were the serious errors made by the government and by the district court? I think the error by the government was the fact that it did not show that the material witness was unavailable before it introduced the testimony of the material witness. I would argue that's harmless because of the other evidence that this person was an alien, including Ms. Demas' testimony that she thought – said he was an undocumented immigrant. But also the fact that she set out what – how their conspiracy worked, that this went right in – last step with that conspiracy, and then Mr. Bridges' lies trying to deny that he came across that day, putting all that together shows that they were smuggling aliens. And the mistake made by the district court was when the defense requested a limiting instruction for – I'm not – and actually, this Court already found that wasn't an error as to the other defendant because Mr. Briggs denied everything. But here, Mr. Moran, the other co-defendant, admitted, and I would have to say he – there is some evidence that might tie Mr. Briggs to that admission. So I think a limiting instruction, quite frankly, should have been given. And why the Court didn't – as I read the record, it looks to me like when they asked for instruction, the judge kind of went off on, oh, well, we have to do jury instructions, and I think kind of forgot about it. But the bottom line is I think those are both errors. But I think, given the overwhelming evidence of this guilt, that he was – By the way, the district court made a finding that Mr. Briggs came over just prior to the alien, not with the alien. Well, yeah. He was standing – there's a video, and you can – there's a video, and he was standing in line just ahead of him there. That's on pages 72 and 73 of the ER. He's just ahead of him, as if leading him. Right. Does anybody have any further questions? Although, yes, the district come back on probable cause. That wasn't known. No, no. That's not part of the probable cause. No. No, absolutely not. Okay. And it's not something referenced by the district judge. No. Thank you. Do you want one minute for rebuttal? Just a very quick rebuttal, Your Honor. I don't want to belabor any points. Your Honor, with respect to the harmlessness analysis, what this Court needs to look at with respect to the impermissibly admitted evidence is, and this is a quote from U.S. v. Bishop, this Court must be convinced that the improperly admitted evidence did not contribute to the verdict. So it's not the case that the Court simply looks at the remainder of the evidence after taking out the offending evidence. It must determine whether or not there was an impact on the verdict. And here, it's hard to imagine a scenario where Mr. Duarte's testimony didn't impact the jury's verdict. He was the star witness. His testimony spanned four hours and over 150 pages of the transcript. The other eight witnesses combined had less than 400 pages between them. And the substance of his testimony went to every charge and every element, essentially, of every charge. So clearly, he was the center of the trial, and I think his testimony could not possibly be considered to be harmlessly admitted. Thank you, Your Honors. Thank you. This case will be submitted.
judges: Wolf, Wardlaw, Gould